## BALTIMORE & O. R. CO. v. WEEDON et al.

(Circuit Court of Appeals, Sixth Circuit. February 2, 1897.)

No. 263.

1. CLERKS OF COURT—NEGLECT TO ISSUE PRÆCIPE—LIABILITY AND DEFENSES.

Where it is by law made the duty of the clerk of a court, upon the filing of a præcipe by the moving party in an action, to issue process to the sheriff, whose duty it is to serve the same, and return it to the clerk, who is then to receive and record the return, it is not a defense to an action against the clerk, for neglect and default in issuing process upon a præcipe, that the plaintiff did not give attention to the clerk's performance of his duty, and see to it that it had been performed.

2. SAME—MEASURE OF DAMAGES—MITIGATION.

In an action against the clerk of a court for failing to issue process in error to review a judgment against the plaintiff, when legally required to do so by proper proceedings on the plaintiff's part, the measure of damages is, prima facie, the amount of the judgment which the plaintiff has been obliged to pay, but the defendant may show, in mitigation of damages, that, even if the plaintiff had had an opportunity to review the judgment, he would have been unable to reduce the recovery against him.

In Error to the Circuit Court of the United States for the Eastern Division of the Southern District of Ohio.

The action was begun by the Baltimore & Ohio Railroad Company against Alfred Weedon, the clerk of the court of common pleas of Guernsey county, and his official bondsmen, to recover damages for an alleged breach of Weedon's official duty as such clerk. The penal sum of the bond was $10,000, and one of the conditions of it was that Weedon should well and truly do and perform, all and singular, each and every duty of his said office as clerk of the common pleas court enjoined upon him by law. Plaintiff's petition set out in detail the circumstances of defendant's alleged breach of duty. It averred that one Grubbs had obtained a verdict and judgment against the plaintiff company for $1,995 for personal injury; that a bill of exceptions was taken, for the purpose of presenting the same to the circuit court on error; that a motion for new trial was duly made and overruled; that after the rendition of the judgment, plaintiff duly filed a petition in error in the circuit court of said county, attached to which petition was a certified copy of the docket and journal entries in said cause in the court of common pleas, and the original papers as required by law; that he delivered said petition and accompanying papers to the defendant Weedon, clerk of the common pleas court, and ex officio clerk of the circuit court; that with the said petition in error the plaintiff filed a præcipe in due and proper form, in accordance with the statute in such cases made and provided, directing the said clerk to issue a summons in error to the sheriff of Guernsey county, Ohio, returnable according to law, directing the said sheriff to summon the said Thomas Grubbs, the defendant in error named in said petition in error, and to notify him of the pendency of the same; that the said defendant, as clerk, disregarding his duties in the premises, failed to issue any summons in error upon said petition in error and præcipe so filed as aforesaid, and the said cause, after the expiration of six months after rendition of said judgment,—the period of limitation within which error proceedings could be brought under the law,—was dismissed by said circuit court because of the clerk's failure to issue summons as required by statute and the præcipe, and the consequent failure to obtain jurisdiction in error over said Grubbs, named as defendant in error therein; that plaintiff had filed a supersedeas bond to stay execution of judgment pending error proceedings; that Grubbs thereafter collected his judgment and interest and costs, amounting in all to $2,231.04; that there were numerous errors apparent upon the record in the suit of Grubbs against the plaintiff, and if the defendant, as clerk, had performed his duty, the judgment would have been reversed; and upon the merits of the action Grubbs had no cause of action. Wherefore the plaintiff averred that by reason of defendant's neglect and default

as clerk the plaintiff had suffered a loss of $2,231.04, for which sum and interest from December 24, 1892, judgment is prayed.

The first defense of the answer was a general denial of all the facts alleged concerning the præcipe, the dismissal of the error proceedings, the collection of judgment. etc. The second defense of the answer charged, in effect, that the failure to serve a summons in the cause was the neglect and default of the plaintiff in taking all the papers from the clerk's office, and that he did not know, until after the expiration of the six months, when plaintiff returned the papers, that a petition in error and præcipe were among the papers. Defendant denied that any petition or præcipe was ever filed in his office. The reply of plaintiff denied that it or its attorney had removed the papers from the clerk's office as alleged in the answer. The cause was submitted to the court, a jury being waived in writing, and the court made the following findings:

"A stipulation in writing, signed by the parties hereto, having been filed in this cause, waiving a trial by jury, the case came on for trial of the facts and law before the court on the 7th day of June, 1894. And, the testimony having been submitted by the respective parties, and the argument of counsel having been heard thereon (the plaintiff requested the court to make a special finding of all of the facts and conclusions of law thereon in this case, which is accordingly done as follows): The court, upon consideration thereof, finds:

"First, in respect of the facts. One Thomas Grubbs sued the above-named plaintiff in the court of common pleas for Guernsey county, Ohio, to recover damages for an injury which he alleged was sustained by him on the 10th day of March, 1885. in consequence of the negligence of the defendant in said suit in suddenly starting its engine at a coaling station at or near ———, when the engine had been stopped to have its tender filled with coal from the chutes of parties who, by virtue of a contract with the railroad company, were accustomed to supply coal to trains as wanted at that place. Grubbs was the servant of the owner of the coal, and alleged that, after having gone upon the engine to get the customary certificate of the engineer for the coal which had been taken on, he was descending from the cab, when suddenly and negligently the engine was sent forward with a jerk, which sent him down, and caused his injury. That suit was tried upon the issues joined therein, and resulted in a verdict and judgment for the plaintiff in the sum of $1,995 and $——— costs of suit. This judgment was rendered on the ——— day of March. 1892. Certain exceptions were taken by the defendant in that suit upon trial, which were thereafter duly incorporated in a bill of exceptions settled by the judge who presided therein. In due season, and within the six months after the judgment allowed by the laws of Ohio for that purpose, to wit, in the month of June, 1892, the said railroad company delivered, for the purpose of being filed, to the defendant, Weedon, who was, and since the 8th day of February, A. D. 1891. had been, and until the 8th day of February, A. D. 1894, continued to be, the clerk of the said court of common pleas, as well as the circuit court for that county, its petition in error, praying for the transfer into the circuit court of the record in that cause made in the court of common pleas, to the end that for errors which it complained had been committed by the said court of common pleas the said judgment might be reversed; and also at the same time delivered to the said clerk, for the purpose of filing, a præcipe for a summons to the defendant in error, Grubbs, to appear in the circuit court to answer the proceedings in error. The petition and præcipe were not then indorsed by the said clerk with the proper filing, and were not so indorsed until after the expiration of the six months above mentioned. The said præcipe for summons was negligently lost sight of by the said Weedon, and he negligently failed to issue the said summons as he should have done, or at all. The record and other requisite papers were transferred into the circuit court, the proceedings being regular to carry the case into that court for review on error, except for the want of the issuance and service of the summons to the defendant in error, Grubbs, or of any step which was requisite to bring him in on the writ of error. Nothing was done by the plaintiff in error in that proceeding, after filing the petition and præcipe aforesaid, to bring in the defendant in error, and no further attention was given to that subject by the said plaintiff in error. In this there was negligence on the part of its attorneys. The cause was upon the calendar of the said circuit court for the December term, 1892, and on the 8th day of that month was called for hearing by that court, when, it being brought to its attention that there had been no summons to the defendant in error, and no

waiver thereof, the proceedings in error were dismissed. The six months aforesaid allowed by the statute for the purpose of such proceedings had then expired, and the dismissal aforesaid operated to finally deprive the railroad company aforesaid of any right and opportunity to obtain a review of the case, or a reversal of the said judgment of the court of common pleas. The dismissal by the said circuit court was the result of the negligence of both the said Weedon, as clerk, and the attorney for the said railroad company; and this court is satisfied by the evidence it would not have happened but for the negligence of each. It was the duty of the clerk to issue the process to the sheriff. It was the duty of the attorney to see that it was made, or the service waived. It is shown that in practice such waiver is frequently made by attorneys as a matter of courtesy, or to save costs. The said railroad company was, in consequence, obliged to pay the amount of the judgment, with interest and costs, which it did on the 24th day of December, 1892, upon an execution which had been duly issued from said court of common pleas therefor; the whole amount paid being the sum of $2,231.04. Subject to the question of the competency of the inquiry, this court has examined the record and bill of exceptions in the case as subject to removal by the railroad company into the said circuit court, and is of the opinion that for an error in the refusal of the court of common pleas to permit a witness called by the defendants therein to testify whether the movement of the engine at the time of the accident was such as was usual or not (such witness having been the fireman on the engine at the time), the judgment would, in all probability, have been reversed. But this court sees no other reversible error in that record and bill of exceptions, and finds that the evidence in that case was such that the jury might lawfully find the verdict they did. No further proof than that already noted has been given on subject of the measure of the damages sustained by the plaintiff in this suit. Upon the foregoing specific facts this court finds generally thereon for the defendant.

"Second, as to the law, the court holds: (1) That the defendant is liable to such damages as were naturally and legitimately the result of his failure to issue the said summons in error. (2) He is not liable for such damages as resulted from the supervening negligence of the railroad company. (3) The defendant is not liable for the results of his own negligence concurring with the negligence of the railroad company. (4) The defendant is not liable for damages as the result of his negligence, which damages would have been avoided by the exercise of reasonable diligence on the part of the railroad company. (5) The court also holds that, in the absence of any judicial determination upon the merits of the case of Grubbs against the railroad company, that the plaintiff could not recover, and non constat the plaintiff might not have recovered therein. There is no proof showing damages to the railroad company with sufficiently legal certainty beyond the costs and expenses to it of the trial in the court of common pleas, and, there being no evidence of those, the plaintiff is not entitled to recover upon the case, even though it had not been negligent in attending to the service of the summons in error or obtaining a waiver thereof.                    ,                    H. F. Severens, U. S. Judge.

"Dated June 11, 1894."

The plaintiff at the time excepted severally to each of the following conclusions of law, to wit, the second, third, fourth, and fifth. The plaintiff also excepted to the finding that it was the duty of the plaintiff to see that a summons in error was served upon Grubbs, and that it was negligent in that regard.

John H. Collins, for plaintiff in error.

Geo. K. Nash, for defendants in error.

Before TAFT and LURTON, Circuit Judges, and HAMMOND, J.

TAFT, Circuit Judge (after stating the facts). Certain of the findings of fact of the circuit court are really findings of law. Thus, the court found that, as matter of law, it was the duty of the clerk to receive and file the petition in error and præcipe. The court found as matter of law that it was the duty of the attorney to supervise the action of the clerk in filing the petition and the præcipe and

issuing summons thereon. The court found, as matter of fact that the clerk did not file the præcipe, and did not issue summons; and that, after handing the clerk the petition and præcipe, the plaintiff paid no further attention to the same. As a further fact the court found that the loss resulted from the failure of the clerk to issue the summons, and of the plaintiff's attorney to supervise his doing so; that is, from the concurring negligence of both the clerk and the plaintiff's attorney. The plaintiff excepted to the finding that it was the duty of the plaintiff or its attorney to see that the summons was served, or that it was negligent in this regard. If it was not plaintiff's duty to supervise the clerk's performance of his duty, then there was no negligence on plaintiff's part, and the finding that the loss was occasioned by plaintiff's supervising or concurring negligence was erroneous. We have presented, therefore, on this record, for review, the question whether, in a suit for neglect and default by the clerk in issuing summons on a præcipe, it is a defense that the plaintiff did not, after handing the præcipe to the clerk, give attention to the clerk's performance of his duty, and see to it that it had been performed. It is true that the findings of law and fact are hardly responsive to the issues raised upon the pleadings, but, as no objections and exceptions to the introduction of evidence were preserved for our consideration, we may properly assume that the evidence upon which the findings were made was introduced without objection, and that the court then proceeded, as it had the right to do under the rules of code pleading in Ohio, to hear and decide the case on the issues made by the evidence, rather than upon the pleadings. Railway Co. v. Whitcomb, 31 U. S. App. 374, 381, 14 C. C. A. 183, and 66 Fed. 915; Hoffman v. Gordon, 15 Ohio St. 211, 218.

Was it the duty of plaintiff to see to it that the clerk issued the summons, or had he the right to rely on the clerk's doing his duty? Or, to put it in another way, can the clerk excuse his default by saying, "You ought to have anticipated my negligence and provided against it"? We think that the questions must be answered by a consideration of the provisions of the Ohio Code of Practice and the decisions under it. Section 6713 of the Revised Statutes of Ohio provides that proceedings to reverse a judgment shall be by petition in error, filed in the court of error; that "thereupon a summons shall issue and be served, or publication made, as in the commencement of an action, and a service on the attorney of record in the original case shall be sufficient." Section 6714 provides that: "The summons mentioned in the last section shall, upon the written præcipe of the plaintiff in error or his attorney, be issued by the clerk of the court in which the petition is filed, to the sheriff of any county in which the defendant in error or his attorney of record is found; when the writ is issued to a foreign county, the sheriff thereof may return it by mail to the clerk and shall be entitled to the same fees as if it had been returnable to the court of common pleas in which such officer resides; and the defendant in error or his attorney, may waive in writing the issue or service of the summons." Under the title "Procedure in the Courts of Common Pleas and Superior Courts and in Circuit Courts on Appeals," the specific duties of certain officers are

prescribed. By section 4959 it is required that "all writs and orders for provisional remedies and process of every kind shall be issued by the clerks of the several courts; but before they are issued a præcipe shall be filed with the clerk demanding the same." This provision appeared in the statutes of Ohio as early as 1824. In State v. Caffee, 6 Ohio, 150, the supreme court of the state held that "no clerk is bound to issue process without a præcipe in writing filed as his authority and indemnity." By section 4958 he is required to enter the issue of a summons, and to record in full the return thereon. By section 4960 the clerk is required to "file together and carefully preserve in his office all papers delivered to him for that purpose in every action and proceeding." And it has been decided by the supreme court of Ohio that a paper is considered filed when delivered to and received by the proper officer. King v. Penn, 43 Ohio St. 57, 1 N. E. 84. By section 4966 the sheriff is required to indorse upon every writ or order the day and hour it was received by him; and by section 4970 to execute every summons, order, or other process, and return the same as required by law. By section 4967, when the sheriff is interested in an action, the process is to be served by the coroner. By section 6713, already quoted, it is provided that summons in error shall issue as in the commencement of an action. Hence the proceedings to begin an action are in pari materia with those beginning suits in error. By section 5035 a civil action is to be "commenced by filing in the office of the clerk of the proper court a petition and causing a summons to be issued thereon." Section 5036 requires that "the plaintiff shall also file with the clerk of the court a præcipe stating therein the names of the parties to the action, and demanding that a summons issue." Section 5037 provides that "the summons shall be issued and signed by the clerk, and be under the seal of the court from which it is issued; * * * it shall be directed to the sheriff of the county who shall be commanded therein to notify the defendant that he has been sued and must answer at a time stated therein." Section 5041 provides that the summons shall be served by the officer to whom it is directed. Section 5043 provides that an acknowledgment on the back of the summons or petition by the party sued, or the voluntary appearance of a defendant, is equivalent to service.

We have thus reviewed at some length the statutory requirements in Ohio for the beginning of original suits and for the beginning of suits in error, and those which describe the exact duties of the officers. We may take judicial notice of what the actual practice under these statutes is. The language of the statutes, and the actual practice, leave no doubt in our minds that the policy of the state of Ohio from the beginning has been to have process issued and served by a public officer, indifferent between the parties, and not to leave it to the agent of the party plaintiff, as in so many other states. It is the clerk's duty to issue the process to the sheriff; it is the sheriff's duty to serve it, and return it to the clerk; it is the clerk's duty to receive the return and record it. The whole machinery is put in motion by the præcipe of the moving party to the action, but after that, the law provides no place for the intervention of the party.

We think this elaborate and detailed provision for the machinery of service and return was for the very purpose of relieving the private party who should properly set it in motion from any responsibility as to its due operation, and that thereafter he has the right to rely on the public officer's performing his duty, secured as it is by his oath and official bond. It is a well-known maxim of the law of evidence that, as between private individuals, negligence is not to be presumed. A fortiori, is one not at fault in presuming that a public officer, under the obligation of his oath and bond, with his duties exactly and minutely fixed by positive law, will not fail to discharge them. He may rightly act on that presumption. Some reference is made in the finding to a common practice among attorneys for plaintiffs in error of procuring from the attorneys for defendants in error a waiver of summons, but we cannot see how this affects the question before us. Certainly, the regular mode of bringing a defendant in error within the jurisdiction in error is by causing summons to issue and to be served. The other mode is only available by consent of the opposing party. When no such consent is shown, can a charge of negligence be predicated on a pursuit of a remedy not dependent on such consent? Clearly not. Nor does the fact that the plaintiff or his attorney must generally be an active agent in procuring a written waiver of summons tend in the slightest degree to show that such agency is either required of them or is customary in the issue, service, or return of the summons in the regular way. Hence we are not satisfied with the view that the failure of the Baltimore & Ohio Company to stand over the clerk and see that he did his duty was negligence contributing to the subsequent loss. In an action against the clerk for his default, we think it can hardly lie in his mouth to say to the plaintiff, "Yes, I was negligent; but you ought to have anticipated that I would be negligent, and to have watched me in my work, and spurred me to do my duty." In the case of Louisville & N. R. Co. v. East Tennessee, V. & G. Ry. Co., 22 U. S. App. 102, 109, 9 C. C. A. 314, 60 Fed. 993, the train of one company crashed through the train of another standing on the crossing of the two lines. The former sought to escape liability on the ground that the latter was guilty of negligence in allowing its train to stand on the crossing. It was in evidence that there was an agreement between the companies that the passenger trains of each might occupy the crossing while unloading baggage. It further appeared that a statute of the state required each company to stop its train 50 feet before reaching the crossing. We held that the plaintiff company was not guilty of contributory negligence relieving the defendant from liability. We said (page 109, 22 U. S. App., page 317, 9 C. C. A., and page 995, 60 Fed.):

"Was it negligence, as between the two companies, for the one to rely on the other's compliance with the statute, and its tacit agreement? It seems to us clear that it was not. It does not lie in the mouth of the Louisville Company, after consenting that the Cincinnati Company should put its train in a place not dangerous except through the negligence of the Louisville Company, to say that the Cincinnati Company was wanting in due care in reposing such invited confidence. It is not negligence, ordinarily, for one to act on the theory that another will comply with his statutory duty, unless there is some reason for thinking otherwise.

Jetter v. Railroad Co., 41* N. Y. 154; Baker v. Pendergast, 32 Ohio St. 494; Railroad Co. v. Schneider, 45 Ohio St. 678, 699, 17 N. E. 321; Stapley v. Railway Co., L. R. 1 Exch. 21. Still less can the charge of contributory negligence be made by one who invited or consented to the action, and thereby impliedly agreed that it should be attended with no danger from him."

We think the principle of these cases applicable in the cause before us. The railway company here could rely not only on the statutory obligation of defendant to issue the summons, but also on something that very nearly resembled a contract obligation implied in the condition of defendant's official bond. In such a case, to hold that a failure of the obligee actively to prevent a default by the obligor will defeat recovery on the obligation, is to render the latter a worthless protection. With deference to the views of our colleague, Judge HAMMOND, who differs from the majority of court on this point, we do not think that any of the cases relied on by him apply to the one before us. That which, on its face, most nearly resembles this, is Curlewis v. Broad, 1 Hurl. & C. 322. The suit was for damages against a process server whom plaintiff had employed to serve a summons according to the procedure act for failing to indorse the writ as required by the act. There was a plea that the defendant was not instructed to indorse the writ as required by the statute, and that he was not retained to do more than serve the writ, and was not requested to make the indorsement. There was a demurrer to the plea, and joinder therein. The section of the statute relied on enacted that "the person serving the writ of summons shall and he is hereby required within three days at least after such service to endorse on the writ the day of the month and week of the service thereof, otherwise the plaintiff shall not be at liberty, in case of nonappearance to proceed under the act." The plea was held good, and the plaintiff was given leave to reply. There was no formal judgment, but from the remarks of the barons arguendo it is to be inferred that the conclusion was founded on the view that the process server was not a public officer charged with certain statutory duties, but was a mere private agent of the plaintiff's attorney, to do what he was told to do; that the measure of the server's duty was his instructions, and not the statutory requirement as to how the writ should be served; that the statute measured the responsibility of the attorney, whose duty it was, through his private agents, selected as he chose, to see that the writ was properly served. The case, in effect, holds that the server would be liable if he had been instructed to indorse the writ and did not do so. How this bears upon the case at bar, it is difficult to see. Under the mode of procedure in the case cited it was the plaintiff's duty, or that of his attorney, to serve the summons; and he might procure the service to be done by any one, —as one of the judges suggests, by a school boy. Under the Ohio statute, the writ must be issued by the clerk, who is not plaintiff's agent, but a public officer; and it must be served by a sheriff, or one of his general or special deputies. Their duties are fixed by statute, not by private agreement. The case of McRaney v. Coulter, 39 Miss. 390, is the strongest one for the view of Judge HAMMOND. There the court held it was a want of due diligence in an attorney

not to read the minutes of the clerk to see that he had properly entered an order granting a motion for new trial. As to this authority, we have only to say that, if it lays down a proper measure of an attorney's care, there are few, if any, careful attorneys within the jurisdiction of this court.

We come now to the question of damages. Upon this point we are all agreed, and Judge HAMMOND states in his opinion more fully ' than it is proposed here to state them the reasons for our conclusion. The defendant deprived the plaintiff of its legal right to contest the question of its liability to another for $2,130 in a court of error. What is that right worth? Really its value depends on the probability of a reversal, and the successful event of a new trial. Ordinarily, on a proceeding in error, the judgment of the court below is presumed to be correct until it is shown otherwise. Can the clerk who negligently prevented the proceeding in error rely on that presumption to escape being mulcted in damages for depriving the plaintiff in error of the privilege and right of meeting and overcoming it? We think not. There is but one case in point, and that only a nisi prius ruling. In Cohen v. Marchant, 1 Disney, 113, the action was against a justice of the peace for failing to date properly the appeal bond, whereby the right of appeal was lost. Judge Storer told the jury that they might measure the damage by the amount of the judgment. It is a rule in actions for negligence in issuing execution on a judgment, or for negligence in allowing the escape of one whose body is taken in execution, that the amount of injury is prima facie measured by the face of the judgment, and that the burden is on the negligent officer to reduce the recovery by showing the insolvency of the defendant. Carpenter v. Warner, 38 Ohio St. 416. As against a public officer who negligently deprives another of his right to be heard in a suit against him, we think the same rule of evidence should prevail, and that the plaintiff should be entitled to recover all that the negligence of the defendant has caused him to pay unless the officer can show that, even if he had not been negligent, the complaining litigant would have had ultimately to pay the same amount. In order to do this, the defendant may be obliged to submit to the court the record in the first case, to decide whether there was reversible error, and also to adduce evidence to show that on a second trial a second verdict of the same or greater amount would have been rendered against the plaintiff. The anomalies will then be presented of having one nisi prius court review the errors of another, and of having one jury decide what conclusion another jury would have reached on a given state of evidence; but these anomalies seem inherent in the nature of the controversy, unless it is to be held either that the damages are merely nominal, or that they are fixed at the amount of the judgment. The first alternative is to be avoided, if possible, because it practically gives the clerk complete immunity from what may be most serious and injurious consequences of his neglect; while the second can hardly be adopted by a court, because it would seem to be judicial legislation, fixing a penalty for default, and not the assessment of damages according to the reason or analogy of damages in like cases. We are not, how-

ever, in the case at bar, called upon to state definitely the limits within which the defendant in such cases may introduce evidence in mitigation of damages, because the defendant below introduced no evidence tending to reduce them. Indeed, the learned judge at the circuit found affirmatively that there was reversible error in the record, and there was no evidence tending to show that on a new trial a similar verdict would have been reached. Upon the findings of fact made by the court below, after rejecting the findings of law, which we have found to be erroneous, a judgment should have been entered for the plaintiff for the full amount paid by it on the judgment which it was prevented from reversing on error, together with costs and interest.

The judgment of the circuit court is reversed, with instructions to enter judgment on the findings in accordance with this opinion.

HAMMOND, J., dissents from the views of the court as to contributory negligence, and concurs with the court upon the question of damages.