### Bell v. G. Ober & Sons Company.

1. In an action of trover for collaterals which had been pledged to the plaintiff by the defendant to secure a debt due to the former by the latter, and which the defendant had subsequently converted to his own use, the measure of damages was not necessarily the highest value of the property, for the plaintiff could in no event recover a money verdict for a larger sum than the amount of the debt secured by the collaterals; and consequently, where this debt

was a promissory note payable in middling cotton, and the evidence failed entirely to show the value of such cotton at the time when, and the place where, the note was due and payable, the plaintiff could have no money recovery at all.

2. It is competent for a defendant who has been sued for the conversion of specified personalty, to testify in general terms that he has settled or accounted for the same, and the testimony should go to the jury for what it may be worth. That the witness does not remember or cannot state the details may affect the probative value of the testimony, but does not authorize the court to instruct the jury to disregard this testimony altogether.

3. There was no error in rejecting the evidence offered "to prove fraud in procuring the note and contracts in evidence."

May 13, 1895. Brought forward from the last term.

Bail-trover.    Before Judge BOWER.    Decatur superior court.    January term, 1894.

On February 16, 1891, suit was brought against Bell for 7,590 pounds of lint-cotton of the alleged value of $664.12, further alleged to have been collected by him for plaintiff, on notes entrusted to him for that purpose; and for certain notes taken by him for sales of plaintiff's fertilizers, and entrusted to him by plaintiff for collection. It does not appear what plea he filed. At the trial he yielded all question as to the title to the notes, and under the evidence and his admissions, the jury were instructed to find for the plaintiff $100 as their value. He further admitted that plaintiff was entitled to recover about 3,000 pounds of cotton; plaintiff contending that it was entitled to recover a larger amount, and electing to take a money verdict. In evidence appeared a note from defendant to plaintiff, dated May 9, 1890, promising to pay 19,158 pounds of cotton on board cars at Fowlstown, Ga., November 1, 1890, and pledging, as collateral to secure its payment, all planters' notes from sales of plaintiff's fertilizers "shipped me past season upon terms of contract." This contract also was in evidence, the material terms of it being as follows:  Bell was appointed agent for the sale of plaintiff's fertiliz-

ers; plaintiff to consign to him, for sale on commission for its account, fertilizers to a certain extent at certain net prices, his commission or compensation for selling to be the difference between said prices and the prices at which he might sell; all fertilizers so shipped to him to be absolutely plaintiff's property until sold, and all goods unsold and the proceeds of sales to be held by him in trust for plaintiff and subject at any time to its order; Bell to keep an accurate account of all sales made by him, and to render to plaintiff, not later than May 1, 1890, a complete statement of all such sales, names of purchasers, and amount of stock remaining unsold, and to take notes for all time sales, such notes to be returned by plaintiff to him for collection, and the same or their proceeds to be held strictly in trust for plaintiff; all cash received for sales to be promptly remitted by Bell to plaintiff; and he to account to it for such fertilizers as it shipped to him, at specified prices payable in currency or in middling cotton at ten cents per pound, and to elect, not later than May 1, 1890, on which basis he would settle, giving his note due November 1, 1890, etc. Plaintiff introduced also a list furnished to it by Bell, of notes representing sales made by him; and testimony that the amount of cotton shipped by him to plaintiff in payment of his note was 18 bales or 8,218 pounds, leaving 10,940 pounds not shipped, that he had returned to it uncollected planters' notes amounting to between three and four thousand pounds, and that he admitted to Schaefer, plaintiff's agent, in February, 1891, when Schaefer made demand of him for settlement, that 13 bales then in his possession had been collected by him on notes given for plaintiff's fertilizers. Defendant denied having made such admission; and claimed that after deducting the cotton and notes he had delivered to plaintiff, his commissions, certain money he had paid plaintiff (the amount of which he did not

state), and sundry amounts of planters' notes in settlement of which he had taken live stock by direction of plaintiff's agents, he had settled all except what he admitted to be due. Plaintiff's testimony was to the effect that the direction, if any, as to taking live stock, related to contracts for 1889 or previously, and were entirely disconnected from the one here in question. The market value of cotton at the time of the demand was seven and three eighths cents per pound. Between then and the trial it was worth as high as nine and a quarter cents in Bainbridge.

The jury found for the plaintiff $706.52, and defendant's motion for a new trial was overruled. The motion alleges the following among other grounds:

Error in charging the jury, that if they found for the plaintiff they could find the highest proved value of cotton between the time of the demand and the trial.

Error in charging: "You will not allow any credit in this case on indefinite, vague assertions of the defendant that he has settled everything else, but cannot tell how he did it. There is no use to mince a rule of law that you cannot enforce in any case. The defendant is supposed to know how he did it; and if he cannot tell how he did it, from want of memory or other reasons, the jury is not authorized to allow it to him. The mere statement that he is satisfied or knows that he has settled all the balance except this three thousand pounds and those notes returned, won't answer. A credit allowed upon that statement would be contrary to law; because it is his duty as a defendant, when a case is made out of his having collected the cotton, to show exactly what he has done with it, so the jury can see it like a business of their own. If they cannot see it that plain, plain enough to know what he did with it, they cannot take a general assertion that he knows that he has done it."

Error in refusing to allow defendant to prove fraud

in procuring the note and contracts in evidence, by asking Schaefer: "Did you tell Bell that you were letting him have these goods as cheap as anybody else that sold in that territory?" It is insisted that the answer to this question would have shown that plaintiff's agent did tell Bell this, and did sell and deliver to other agents and merchants in the same county the same fertilizer at five dollars per ton less than it was billed to defendant.

D. A. RUSSELL, by L. E. BLECKLEY, for plaintiff in error.   G. F. WESTMORELAND, DONALSON & HAWES and MARSHALL J. CLARKE, *contra.*

LUMPKIN, Justice.

The official report sets forth a statement of so much of the record as is necessary to an understanding of the following discussion.

1. The case was tried in the court below upon a wrong theory. An essential element in measuring the damages was the value of middling cotton at the time the defendant's note became due, which was November 1st, 1890. Code, §2774. A creditor's recovery from his debtor in an action of trover for converting collaterals cannot exceed the amount of the debt with legal interest. Section 3077 of the code, which declares that in estimating the value of personalty unlawfully detained, the plaintiff may recover the highest amount which he can prove between the time of the conversion and the trial, can be applied in a case like this only where it affirmatively appears that the debt will not be overpaid by a recovery so measured. In no case can a plaintiff in an action of trover for the wrongful conversion of his security, recover more for the loss thereof than he could recover were his action founded directly on his debt or demand. *Clark et al.* v. *Bell, ex'r*, 61 *Ga.* 147; *Horne* v. *Guiser Co.*, 74 *Ga.* 790; *Bradley* v. *Burkett*, 82 *Ga.* 255. As the evidence in the present case failed

entirely to show the value of middling cotton at the time when, and the place where, the defendant's note was due and payable, the jury had no legal basis upon which to calculate the amount of the defendant's liability. Cotton was worth in February, 1891, only 7 or $7\frac{1}{2}$ cents per pound. At the time of demand, it was worth $7\frac{3}{8}$ cents. It rose before the trial to $9\frac{1}{4}$ cents. The court by its charge left the jury free to assess the damages at the advanced rate; and this was certainly error.

2. The correctness of the propositions announced in the 2d head-note, when considered in connection with the facts to which they relate, will be obvious without argument.

3. It does not appear from the record before us that the defendant filed any plea alleging fraud in procuring the notes and contract in evidence. Therefore we cannot say that the court erred in rejecting evidence offered to prove the existence of such alleged fraud.

*Judgment reversed.*