FARMERS' & MERCHANTS' BANK OF VANDALIA, ILL., v. MAINES.

(Circuit Court of Appeals, Sixth Circuit. April 5, 1910. On Rehearing, November 9, 1910.)

No. 2,001.

1. TRIAL (§ 177*)—DIRECTION OF VERDICT—REQUEST FOR PEREMPTORY INSTRUCTIONS—EFFECT.

Where, at the close of all the evidence, in addition to requests for special instructions touching disputed facts in issue, both sides presented motions for a directed verdict, the court erred in treating the motions as a joint consent to submit the facts to the court.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 400; Dec. Dig. § 177.*]

2. SHERIFFS AND CONSTABLES (§ 139*)—OFFICIAL DUTY—BREACH—DAMAGES.

In an action against a sheriff for breach of duty consisting of mere neglect, his liability is restricted to actual damages. Where the losses were capable of estimation, the prima facie measure of damages, to wit, the amount remaining due on the writ, is only applied where there is some proof that the debtor possessed property subject to levy of a value substantially equivalent to the judgment at the time of the officer's default.

[Ed. Note.—For other cases, see Sheriffs and Constables, Cent. Dig. § 306; Dec. Dig. § 139.*]

3. SHERIFFS AND CONSTABLES (§ 138*)—DEFAULT—EVIDENCE.

Where, in an action against a sheriff for failure to levy sufficient property to satisfy the debt, plaintiff showed that the debtor possessed at the time of the levy other property than that levied on, but there was no proof that such omitted property was substantially sufficient to satisfy the balance due, the court could not indulge a presumption that it was of such value, in order to justify plaintiff's recovery for the officer's default of an amount equal to such balance.

[Ed. Note.—For other cases, see Sheriffs and Constables, Cent. Dig. § 290; Dec. Dig. § 138.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. SHERIFFS AND CONSTABLES (§ 139*)—INSUFFICIENT LEVY—NOMINAL DAMAGES.

Where, in an action against a sheriff for an insufficient levy, there was no proof as to the value of the omitted goods, plaintiff could only recover nominal damages.

[Ed. Note.—For other cases, see Sheriffs and Constables, Cent. Dig. § 300; Dec. Dig. § 139.*]

On Rehearing.

5. SHERIFFS AND CONSTABLES (§ 138*)—DEFAULT—EVIDENCE.

Where, in an action against a sheriff for failure to levy on sufficient property to satisfy the debt, plaintiff claimed that sufficient property remained in the debtor's residence subject to levy, which, if levied on, would have made the levy sufficient, evidence that shortly after the levy the debtor executed a chattel mortgage on property in her residence other than that levied on to secure a loan of $10,000, in connection with evidence that she did not remember purchasing any of such property from the time of the levy until the date of the mortgage and had moved nothing away, was admissible as some evidence of the value of the personal property remaining on which a levy might have been made.

[Ed. Note.—For other cases, see Sheriffs and Constables, Cent. Dig. §§ 290–296; Dec. Dig. § 138.*]

6. SHERIFFS AND CONSTABLES (§ 138*)—INSUFFICIENT LEVY—EVIDENCE.

In an action against a sheriff for an insufficient levy on furniture and household articles, made in December, 1902, evidence that certain witnesses had seen the articles of household furniture in the debtor's house prior to the levy in October was admissible, since, by comparing the articles with those named in the inventory and those offered at the sheriff's sale, it might be determined whether they were seized or not; the debtor having testified that up to the time of the levy she had moved nothing away from the place.

[Ed. Note.—For other cases, see Sheriffs and Constables, Dec. Dig. § 138.*]

7. SHERIFFS AND CONSTABLES (§ 138*)—DEFAULT—INSUFFICIENT LEVY—VALUE OF UNSEIZED PROPERTY.

In an action against a sheriff for an insufficient levy, it does not require much proof of the existence of leviable and unseized property of a value substantially equivalent to the claim in suit to falsify the sheriff's return, and to cast on him the burden of showing why he should not be charged with the amount due on the claim; very slight evidence being sufficient to shift the burden of proof.

[Ed. Note.—For other cases, see Sheriffs and Constables, Cent. Dig. §§ 290–296; Dec. Dig. § 138.*]

8. SHERIFFS AND CONSTABLES (§ 140*)—DEFAULT—INSUFFICIENT LEVY—EXISTENCE OF LEVIABLE PROPERTY—QUESTION FOR JURY.

In an action against a sheriff for an insufficient levy, evidence of the existence of leviable property from which the balance of plaintiff's judgment could have been made, but for the sheriff's default, *held* for the jury.

[Ed. Note.—For other cases, see Sheriffs and Constables, Dec. Dig. § 140.*]

9. SHERIFFS AND CONSTABLES (§ 138*)—DEFAULT—INSUFFICIENT LEVY—DISSOLUTION OF ATTACHMENT—EVIDENCE.

Where, in an action against a sheriff for an insufficient attachment levy, the only acts of negligence of the officer complained of were consummated while the attachment was admittedly in force and in process of execution, the subsequent dissolution thereof was irrelevant.

[Ed. Note.—For other cases, see Sheriffs and Constables, Dec. Dig. § 138.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Error to the Circuit Court of the United States for the Eastern District of Michigan.

Action by the Farmers' & Merchants' Bank of Vandalia, Ill., against Harrison W. Maines. Judgment for defendant, and plaintiff brings error. Affirmed.

B. B. Selling and J. A. Muir, for plaintiff in error.

Joseph Walsh, for defendant in error.

Before SEVERENS, WARRINGTON, and KNAPPEN, Circuit Judges.

WARRINGTON, Circuit Judge. This suit was commenced February 14, 1905, by plaintiff in error against defendant in error, to recover damages for alleged neglect of Maines, as sheriff, fully to execute a writ of attachment. The complaint, in substance, is that there were within his bailiwick sufficient goods and chattels of one of the attachment debtors, Elizabeth A. Board, subject to attachment to satisfy the debt described in the affidavit accompanying the writ, but that he levied only on part of them, to plaintiff's damage in the sum of $10,000.

The writ was issued by the Circuit Court of St. Clair County, Mich., containing notice to James L. Board and Elizabeth A. Board of the commencement of a suit in that court by the Farmers' & Merchants' Bank of Vandalia, and a command that they enter their appearances within a time specified, stating the damages claimed, and directing return of summons before January 12, 1903; and commanding the sheriff on or before the return day—

"to attach so much of the lands, tenements, chattels, moneys, and effects of the said defendants James L. Board and Elizabeth A. Board not exempt from execution, wheresoever the same may be found within said county, as will be sufficient to satisfy the demand of said plaintiff and costs of writ,"

—and to make inventory thereof, and serve certified copy of the writ and inventory upon defendants. The ground of the attachment was the alleged nonresidence of the defendants.

There were several other writs of attachment sued out by other creditors of the Boards, under which levies were made upon four pieces of real estate at Port Huron, including the Board summer residence and what was called the barn property connected therewith. Levies were also made under the writ now in question upon all this real estate. It is not, however, important to consider the levies upon the real estate, further than to say we are satisfied from the evidence that, owing to the nature of the titles under which some of the property was held, and of prior and superior rights in other parcels of persons other than the Boards, there was no interest of any value in Elizabeth A. Board in any of the real estate at the time of the issue of the writ in question; and there is evidence that the sheriff was seasonably notified, in substance, that Mrs. Board had no interest of value in the real estate. We thus speak of Elizabeth A. Board, because of bankruptcy proceedings commenced against her husband. We shall speak of those proceedings again, though there are several questions arising out of them that will not need consideration. Suffice it to say now that, when the case is stripped of matters immaterial to the present decision, it will

be found that the liability of the defendant must be tested by his conduct in respect of the writ so far as it was directed against chattel property belonging to Elizabeth A. Board.

There is evidence tending to show that on the date of the writ, December 13, 1902, the sheriff was directed by counsel for plaintiff to go at once to the Board home, and "take possession of everything in it; seize all the articles of furniture," etc. He was also told that all the articles belonged to Mrs. Board, and was at the same 'time admonished of Board's financial embarrassment, and of fears that he would be put into bankruptcy. The sheriff sent a deputy with the writ to the Board home at once, and either he or his deputy telephoned to the bank's attorney within a day or two that there were sufficient goods in the house to cover the claim. Part of the goods were seized and appraised; but, although the appraisers chosen were suggested by the bank's attorney, the latter seriously objected to certain valuations which the appraisers made of some of the chattel property. This resulted in further directions from the attorney to seize more of the goods and chattels in the Board home.

It appears, also, that the sheriff requested the bank's attorney to accompany him to the residence, but upon arrival there the attorney was, at the instance of Mrs. Board and through acquiescence of the sheriff, prevented from entering the house, or from personally inspecting the goods taken and appraised, or from pointing out further goods for seizure. The bank's attorney then notified the sheriff, both orally and in writing, that his client would hold the sheriff responsible for any failure to levy upon goods sufficient to satisfy its 'claim. All this culminated in a statement by the sheriff, in substance, that, if the bank would furnish an additional bond of $10,000, he would seize everything in the house. The bond was given on December 19th, and additional articles in the house were on that day seized and appraised. On January 13, 1903, the sheriff made return of the writ of attachment, showing that he had seized and attached property of the defendants, James L. Board and Elizabeth A. Board, described in his certificate and annexed inventory; that on December 31, 1902, he served a copy of the writ of attachment and a copy of the inventory and appraisement upon Elizabeth A. Board, by delivering the same to her personally, but there was nothing purporting to show that all of the chattels in the house were seized or inventoried. December 24, 1902, five days after the sheriff had completed the only proceedings he ever took under the writ, save only to make his return, an order was issued by the United States District Court for the Eastern District of Michigan enjoining the bank and Maines from taking any further proceedings in the suit in the state court against the property attached and taken possession of as that of James L. Board and Elizabeth A. Board, and from selling or otherwise converting any property so attached or taken possession of, and requiring Maines from the time of the service of the order to hold and preserve the property in statu quo until the further order of the court. It appears that the proceeding in bankruptcy against James L. Board, upon which the injunction order was based, was instituted in the United States District Court for the Northern District of Illinois against James L. Board

alone. The declaration in the case in the state court bears indorsement of having been filed January 12, 1903, and is in the usual form upon the common counts in assumpsit, containing a notice that on the trial plaintiff under the money counts would give in evidence certain promissory notes described, which were alleged to have been made by James L. Board to his own order, and indorsed by himself and his wife, Elizabeth A. Board. James L. Board and his wife each filed in the cause a plea of the general issue. October 1, 1903, an order of severance was entered in the cause pending in the state court, directing that the—

"action be severed as to said defendant James L. Board; that all proceedings herein as to said James L. Board be stayed until the further order of this court, and that plaintiff may proceed to trial as to the defendant Elizabeth A. Board, in accordance with the rules and practice of this court."

On October 24, 1903, more than a year before the present action was commenced, the case in the state court was tried against Elizabeth A. Board, resulting in a judgment against her for the sum of $10,656.23 and costs. On February 11, 1904, under a writ of execution issued upon this judgment, the goods of Elizabeth A. Board, which had been seized in attachment, as aforesaid, were sold for $2,733.85.

At the close of the evidence in the trial of the present case, in addition to requests for special instructions touching disputed facts in issue, each side presented, in effect, a motion for a directed verdict. The learned trial judge understood that he was asked to find the facts and announce his judgment thereon, instead of submitting the case under instructions to the jury. The court found in favor of the defendant, except only as to certain articles which had been erroneously set off by the sheriff to the defendant, Mrs. Board. The court thereupon instructed the jury to return a verdict for the value of those articles, to wit, $250, with interest. It is clear to our minds that a misunderstanding arose between court and counsel for plaintiff upon the requests presented relative to controverted facts and a directed verdict. Indeed, in the course of his opinion the judge mentioned the fact "that there is considerable conflict of testimony in this case," and again he said:

"Nor is there any presumption that the debtor has other property than that seized. But the plaintiff, as I have said, must show such property and its value. And that he may do so, and that the prima facie presumption, where he has failed to make the amount of the writ, that he should respond for it, is qualified by the consensus of authority that it is open to him to show that there was not such other property, and in ordinary cases this would be a question for the jury; but, as I have said, the counsel having waived that by each making a motion to direct a verdict, it is my duty in this case to direct a verdict for the plaintiff in the sum of $250, with interest. * * *"

Under the settled law, we think it was error to treat the motions for peremptory instructions as a joint consent to submission of the facts to the court. Minahan v. Grand Trunk Ry. Co., 138 Fed. 37, 41, 70 C. C. A. 463; Empire State Cattle Co. v. Atchison Ry. Co., 210 U. S. 1, 8, 28 Sup. Ct. 607, 52 L. Ed. 931. It is contended by defendant, however, that this error is not prejudicial, because at most plaintiff offered evidence only to show that there were articles in the Board home not included in the seizure, but not to show their value. Indeed,

the main issue seems to have been reduced to the question: Upon which of the parties, plaintiff or defendant, the burden of proving value of the property not taken under the attachment rested. Neither side offered evidence to show such value. The theory of the plaintiff is that, in this state of the evidence, its injury is to be measured prima facie by the uncollected portion of its judgment, and that, the defendant having failed to prove value less than that in mitigation, the plaintiff is entitled to judgment for such uncollected portion. Counsel for plaintiff rely upon that class of familiar decisions which hold that where a sheriff is negligent in executing or making return upon a writ, his acts are presumed to have so interfered with plaintiff's right of collection as to cause a loss of the entire claim upon which the writ is based. Counsel for plaintiff deny application of the ordinary distinction made between writs of final process and of mesne process; and since plaintiff's claim in the attachment suit was reduced to judgment prior to the commencement of the present action, we shall, for the purposes of this decision, treat plaintiff's right as though it had arisen under a writ of execution. Springett v. Colerick, 67 Mich. 362, 34 N. W. 683.

There are several discriminating features of the decisions relied on which require attention. One is found in cases where the neglect of the officer related to a subject in which the damages were not susceptible of ascertainment, such as negligent permission of a person imprisoned for debt to escape. Another appears in cases relating to property and where the damages were capable of estimate, and the officers received the writs, but failed altogether either to execute them or to make returns upon them, or failed in both respects. Still another arises in cases where the damages were ascertainable, and the neglect of the officers consisted in making only partial levies, but making due returns so far as the writs were executed. As regards the necessity to place the officer in default, it is clear that different allegations and proofs would be required according as a given case would fall under one or another of these classes of cases. Yet the cases are cited indifferently in support of the claim that the present case is controlled by the prima facie rule of damages before stated; and it must be conceded that, as respects at least the first and second classes alluded to, there are many decisions in which the rule is applied indifferently. The truth is, the cases are not harmonious (Dow v. Humbert, 91 U. S. 294, 299, 23 L. Ed. 368), and so much confusion has arisen as in many instances to induce the statement that each case must depend upon its own particular circumstances.

But there is one principle that must be said to have found expression in all of the cases, where it could be applied with any degree of certainty. It is that, in cases of mere neglect of the officer, his liability shall in the end be restricted to actual damages. Further, we think enough can be gleaned from the decisions to justify the statement that in a majority of instances, where the losses were capable of estimation, the prima facie measure of damages in question was declared only where there was some proof on the part of the plaintiff that the debtor was possessed of property which was subject to levy, and of value sub-

stantially equivalent to the judgment at the time of the officer's default; and, although the reports of the cases in which the rule is announced frequently fail to show whether such proof was offered under corresponding allegations or not, yet it is to be presumed that it was. Indeed, it is difficult to see how in any case involving charges of mere neglect, where return has actually been made, proof of falsity of return could be shown except by allegations and proof of possession of property subject to levy, as stated. To illustrate: In Magne v. Seymour, 5 Wend. (N. Y.) 309, the action was on the case for a false return nulla bona on an execution for $510. A receipt was offered in evidence showing that the sheriff had previous to his return levied on property in possession of defendant in execution, and the testimony of a witness was presented showing that he had seen articles similar to those mentioned in the receipt in the possession of the debtor, and that the value of merchantable property of that description would exceed $500. In the course of the opinion, Savage, C. J., said:

"It is contended in this case that the return verifies itself. It is true that the plaintiff must falsify the return, and that must be done by sufficient testimony. Had there been in this case a bare return on the execution, without any evidence of a levy having been made, the plaintiff would have been bound to falsify the return. Suppose he had produced a witness who had testified that the sheriff had in fact levied on sufficient property in possession of the defendant in the execution, and then rested; it seems to me that the burden of proving the property out of Barrington would have been thrown upon the sheriff. * * * The proof of the value of the goods was certainly defective. It merely proved that such property as was levied on, if merchantable, was of a certain value; but enough, I think, was shown to prove that it was of some value, and that plaintiff would, at all events, be entitled to recover nominal damages."

The learned Chief Justice said further that prima facie evidence on the part of plaintiff of the falsity of the return is sufficient in the first instance. That decision was approved by Justice Nelson in Chapman v. Smith, 16 How. 123, 144, 14 L. Ed. 868. In Stevens v. Rowe, 3 Denio (N. Y.) 327, 334, the recovery sought was for alleged neglect of the sheriff under a writ of execution. It was alleged in one count of the declaration that "defendants in the execution had goods and chattels whereof the sheriff might and ought to have made the money." At the trial the judgment and execution were proved. It was also shown that the execution was placed in the hands of the sheriff, and "plaintiffs also gave evidence that the defendants in the execution had personal property from which the sum might have been levied and the money made." Beardsley, J., in the course of the opinion said:

"Prima facie the sheriff is liable for the full amount of the execution debt, as it is presumed to have been lost by his neglect. This, in my estimation, is not a very violent presumption, but still may be just in regard to an officer who is in default. But when it is shown that the debt has not been lost, there is no room for presumption, and the prima facie case no longer exists."

In Adams v. Spangler (C. C.) 17 Fed. 133, the action was to recover for alleged neglect of a sheriff in making levy under a writ of

attachment.   McCrary, J., sustained the charge of the trial court in which the jury had been instructed that, if they found for the plaintiff:

"They were bound to find for the difference between the amount of his judgment and the amount realized upon the property which was seized under the attachment; it being a conceded fact that there was sufficient property in the store at the time the levy was made, if it had been taken upon the writ, to pay the entire claim."

See, also, Taylor v. Wimer, 30 Mo. 126, 129; Bradford v. McLellan, 23 Me. 302, 303; Willard v. Whitney, 49 Me. 235, 237, 241; Commonwealth v. Contner, 18 Pa. 439, 444–446, per Black, C. J.; Bank of Rome v. Curtiss, Sheriff, 1 Hill, 275, 276, per Cowen, J.; Gilbert v. Watts-De Golyer Co., 66 Ill. App. 625, 628, 630; Bonnell v. Bowman, 53 Ill. 460, 461; Sec. Nat. Bank v. Gilbert, 174 Ill. 485, 486, 494, 51 N. E. 584, 66 Am. St. Rep. 306; Dunphy v. Whipple, 25 Mich. 10, 13, per Cooley, J.; Springett v. Colerick, 67 Mich. 362, 364, 34 N. W. 683. In Laflin v. Willard, 16 Pick. (Mass.) 64, 67, 26 Am. Dec. 629, and Lawrence v. Rice, 12 Metc. (Mass.) 535, 541, per Shaw, C. J., it was held that plaintiff, having failed to prove damages, was entitled only to nominal damages.   It must be conceded that in cases like most of the foregoing, the prima facie measure of damages as claimed by plaintiff will ordinarily be applied.   But surely some inference is to be drawn from these cases and others of their class of a necessity for allegation and some proof of leviable property of a debtor sufficient to satisfy the claim.   What probative relation can be said to exist in such a case between the face of a judgment and the amount of a loss thereon, alleged to have arisen from neglect of a sheriff, except through some evidence of property of equivalent value which he has failed to seize?

Plaintiff in its declaration alleged that there were sufficient goods of Mrs. Board subject to the writ of attachment to satisfy the debt described in the affidavit.   But we need not repeat that it made no pretense of offering proof in support of the portion of the allegation that the goods were sufficient to satisfy the claim.   If the allegation and proof had been that the goods were of a value equal to only a small percentage of the uncollected balance of the judgment, we apprehend that it would hardly be claimed that the prima facie measure of damages was equal to the face of this balance.   If, then, the articles in dispute in this case cannot by comparison with the articles in the inventory and the price they brought on sale be said to be worth anything like the unpaid balance of plaintiff's judgment, can it be that a court must indulge, or suffer a jury to indulge, a presumption, and so allow recovery upon the hypothesis that the articles were worth the balance due?   We think not.   No case for damages susceptible of proof has been cited, nor have we discovered any, which holds any such doctrine.   The doctrine could serve no good purpose, and would contradict the rule limiting recovery to the actual damages.   It is to be observed in passing that this conclusion is quite distinguishable from the holding of this court in Baltimore & O. R. Co. v. Weedon, 78 Fed. 584, 591, 24 C. C. A. 249, 257, for there the court had under consideration damages which were not capable of definite ascertainment, and still the dis-

tinguished judge announcing the opinion said of the rule of damages now urged that:

"It can hardly be adopted by a court, because it would seem to be judicial legislation, fixing a penalty for default, and not the assessment of damages according to the reason or analogy of damages in like cases."

We are thus brought to a consideration of the evidence tending to show failure on the part of the sheriff under the writ of attachment to seize the property in dispute of Mrs. Board, and of the effect of the evidence upon plaintiff's right at the time of its submission to the court of a motion for judgment to recover of defendant the balance due under its judgment against Mrs. Board, and also of its right at that time to recover any sum whatever on account of defendant's neglect of duty. Mrs. Board admitted in her testimony that she owned everything in the house, except such articles as belonged to her two sisters. It is not claimed that all of Mrs. Board's goods were taken, but it is said that all of them of any material value were taken. Through testimony of a Mrs. Robeson, a teacher and visitor in the house shortly prior to the attachment, and through Mrs. Board herself, we think it is made reasonably certain that there were in the house from 30 to 40 articles of various kinds, some having certainly more than nominal value, which do not appear in the inventory made under direction of the sheriff. Mr. Ashcraft, one of the counsel for plaintiff, who visited the house to make a demand on the day of the attachment, saw some articles such as furniture, rugs, curtains, etc., in the library which are not mentioned in the inventory. While the articles so omitted consisted of household furniture and other articles of that character, yet no such description was given of them as to convey any reasonable idea of their condition, their original cost, or their real worth. We think it is fair to say, however, after comparison of the omitted articles with those shown in the inventory, in connection with the sum which the inventoried articles brought on sale, that the articles not seized could not have been worth more than a small percentage of the unpaid balance due on the judgment against Mrs. Board. We therefore cannot perceive any ground upon which plaintiff was entitled at most to recover more than nominal damages. We do not overlook the fact so earnestly pressed that plaintiff's attorney was excluded from the Board home at the time the sheriff was engaged in executing the writ; but no act of fraud is charged or proved against the sheriff. It was quite as feasible for plaintiff in the first instance to offer evidence of value of the articles omitted, as it was to prove their identity and omission. The ultimate question then is not distinguishable from the one which arises in any other case where the damages claimed are susceptible of estimate and proof, and nothing more than the bare right of recovery is shown. No sufficient reason can be assigned for leaving the jury in such a case without any intelligible basis upon which to estimate damages, or the court without definite means of correcting the verdict in the event of an allowance of excessive damages. Pennsylvania Co. v. Scofield, 121 Fed. 814, 816, 58 C. C. A. 176.

In Harrow v. St. Paul & Duluth R. Co., 43 Minn. 71, 44 N. W. 881, the action was to recover for negligent killing of a horse, and its size,

weight, age, and qualities were shown without any proof of value. The cause was reversed for error of the court below in permitting the jury to estimate the value on such evidence. See opinion and citations at page 72 of 43 Minn., and page 881 of 44 N. W.

In Bell v. Ober & Sons, 96 Ga. 214, 23 S. E. 7, a question arose concerning the value of certain cotton claimed to have been converted by an agent to his own use. The court refused to allow a verdict and judgment to stand because the evidence failed to show value of the cotton, holding that (page 219 of 96 Ga., and page 11 of 23 S. E.) "the jury had no legal basis upon which to calculate the amount of defendant's liability."

In Thomas China Co. v. C. W. Raymond Co., 135 Fed. 25, 30, 67 C. C. A. 629, 634, a number of questions arose, among which was one for damages claimed by defendant upon the ground that certain machinery was not shipped within an agreed time, which was within 90 days "as required." The machinery was called for in July, but was not shipped until some time in October following. The court instructed the jury that this provision meant "as required" by the needs of the purchaser, and not as called for by him. Judge Severens, in announcing the opinion, said:

"We more than doubt whether this is the proper construction of that term of the contract, but, as no competent evidence was given of the damages resulting from its nondelivery, the defendant was not entitled to recover any, and the error of the court proves harmless. * * * Counsel for defendant insists that it was entitled at least to nominal damages. But such a recovery would establish no right surviving the purposes of the suit—as, for instance, a right pertaining to the title to property—or determine a question of costs, and the claim to damages falls under the maxim, 'De minimis non curat lex.' Haven v. Beidler Co., 40 Mich. 286; Lewis v. Flint & P. M. R. Co., 56 Mich. 638 [23 N. W. 469]."

Despite any error, then, that was committed by the court below, as before pointed out, we see no escape from the rule that this court is not "concluded by the reasons stated by the trial judge for his action in a motion for a peremptory instruction at the close of the evidence." As said by the present Mr. Justice Lurton in Louisville & N. R. Co. v. Womack, 173 Fed. 752, 759, 97 C. C. A. 559, 566: "If the ruling was right upon any ground, it would be folly to reverse." In truth, it was frankly stated by counsel for plaintiff that, unless the prima facie rule of damages for the unpaid balance of its judgment against Mrs. Board could be applied, the plaintiff had no cause for complaint. Furthermore, the case falls under the rule laid down in paragraph 6 of the opinion in Thomas China Co. v. C. W. Raymond Co., supra.

The judgment below will be affirmed, with costs.

### On Rehearing.

Upon a rehearing of this cause, our attention was called to the exclusion of a certain chattel mortgage offered in evidence at the trial below, which we think should have been admitted. While the ruling was made the subject of one of the many (143) assignments of error presented in the record, yet no allusion was made to it in any of the original briefs, and thus we overlooked its importance. Indeed, as appears in the original opinion, the case was so presented at the first

hearing as to impress us with the belief that the unseized property was plainly and materially less in value than the uncollected portion of the judgment, and for that reason we did not think that a judgment could be rightfully imposed for the unpaid balance. But, in view of what we shall now point out, we believe that we fell into error for which our judgment of affirmance must be reversed.

The plaintiff offered in evidence a chattel mortgage purporting to have been given on February 19, 1903, by Elizabeth A. Board to M. Atkinson, containing these words:

"Witnesseth, that the mortgage for $10,000 * * * paid by the mortgagee * * * has granted," etc., "unto the mortgagee," etc., "all and singular, the goods and chattels particularly mentioned * * * in schedule marked A, all of which goods," etc., "now are the property of said mortgagor and situated upon the premises known as No. 1103 Pine Grove avenue in the city of Port Huron. Provided the mortgagor shall not repay the mortgagee within five days."

Then follows the statement:

"The usual provisions for sale on default, insurance, partial payments and costs accompany."

The instrument was filed February 20, 1903. All that appears in the record respecting the schedule of goods and chattels so mortgaged is that "it contains a list of household goods by general terms, as 'beds, glassware.'" The instrument was ruled out, and exception reserved.

We understand that the goods and chattels mentioned and scheduled in the mortgage were at its date situated in the house in which the goods and chattels were seized under the writ of attachment in question. Was the mortgage admissible? On its face it represents an independent transaction had between strangers to the present suit; but if the transaction in truth was a present loan of $10,000, it necessarily disclosed an estimate of value on the part of the lender and also of the owner, plaintiff's judgment debtor herself, upon the articles mortgaged in excess of the uncollected portion of the judgment. It is consistent with such a loan, though it is open to explanation. It must be borne in mind that we are not concerned with the weight, but with the admissibility, of the instrument as evidence, because it will be remembered from the former opinion that through a misconception the cause was taken from the jury and determined by the court.

If the instrument had represented a sale, instead of a mortgage, of the goods and chattels, we think it would have been admissible as some evidence of the value of the articles at the time of the sale. Parmenter v. Fitzpatrick, 135 N. Y. 190, 196, 31 N. E. 1032, per Peckham, J.; Norton v. Willis, 73 Me. 508; Kendrick v. Beard, 90 Mich. 589, 51 N. W. 645; Raymond Syndicate v. Guttentag, 177 Mass. 562, 59 N. E. 446; Matter of Johnston et al., 144 N. Y. 563, 565, 39 N. E. 643; Peter v. Thickstun, 51 Mich. 589, 593, 17 N. W. 68; Cliquot's Champagne, 70 U. S. 114, 111, 18 L. Ed. 116; Roberts v. Dunn, 71 Ill. 46, 50; M. & C. C. of Balto. v. Smith, etc., Co., 80 Md. 458, 31 Atl. 423. The theory, as we understand it, of the admissibility of sales, is that they represent actual transactions had in good faith between

parties having opposing interests respecting price, and that the transfer of title and payment of money under such circumstances are facts upon which values are generally based. What will property bring at voluntary sale or on lease, is one of the best recognized tests of value. It is common knowledge that loans made in good faith upon pledges of property are based upon these tests of value, yet for purposes of safety value is more or less discounted. We therefore hold this instrument to be admissible, in connection, however, with other evidence to which we shall now refer.

Testimony was offered by the plaintiff, which was in part received and in part excluded in the trial court, concerning household articles claimed not to have been seized under the attachment. For instance, testimony was received which tended to show that certain articles were seen in the house prior to the levy in December, and were also seen there after removal was made of articles seized. But it was sought to show by witnesses that they had seen certain articles of household furniture and furnishings in the house prior to the levy—in October. The proffers so made were excluded, because the witnesses could not say that they had seen the same articles in the house after the seizure and removal thereunder had been completed. Such proffers, considered alone, would, of course, be immaterial; but there might be means of comparing the articles with those named in the inventory, and also with those offered at the sheriff's sale, and so of aiding the inquiry whether the articles were seized or not. Again, Mrs. Board testified that:

"Up to the time this levy was made I did not move anything away from this place."

She was asked whether she had purchased any articles between the date of the levy (December 13th) and the date of the mortgage (February 19th); the question and answer being:

"Had you bought any additional curtains, stoves, chairs, carpets, rugs, tables, desks, bed room sets, pictures, books, music cabinet, bric-a-brac, kitchen ware, table linen, silverware, glassware or any or either of them, after the sheriff came there and before this mortgage was made or signed by you on February 19, 1903, and if so what did you buy? A. I do not remember."

We are unable to perceive why testimony was not admissible which tended to show possession of household articles in Mrs. Board as early as October and later until the date of the attachment, in connection with the inventory, or with testimony to the effect that those articles were not offered at the execution sale, or in connection with any other evidence directly tending to show that the articles had not in fact been seized. It may be safely presumed under such proofs that the possession shown to have been in Mrs. Board in October continued in her until the date of the mortgage, unless they were seized and sold. It is common experience that articles of this character are not the subjects of frequent change, especially during the season and period of time in question. The principle controlling the application of such presumptions and those of kindred character are sufficiently explained for our present purposes in Bethel v. Linn, 63 Mich. 464, 474, 30 N. W. 84; Sanford v. Millikin, 144 Mich. 311, 312, 107 N. W. 884; Rob-

son v. Rawlings, 79 Ga. 354, 356, 7 S. E. 212; Scammon v. Scammon, 28 N. H. 419, 433; Wilkins v. Earle, 44 N. Y. 172, 191, 4 Am. Rep. 655; 1 Wigmore on Ev. § 437.

This is but giving a prospective effect to a proved condition which in its nature is continuous; but in view of the use permitted to be made of the mortgage it is suggestive of a distinction that prevails when it is sought to accord to a proved fact a retrospective operation. This court had occasion in the recent case of W. F. Corbin & Co. v. United States, 181 Fed. 296, 104 C. C. A. 278, to apply the rule that proof of the existence of a given condition raised no presumption of its previous existence; and from the cases there cited, this language of Bigelow, J., in Inhabitants of Hingham v. Inhabitants of South Scituate, 7 Gray (Mass.) 229, 232, was quoted:

"The law presumes that a fact, continuous in its nature and character, like domicile, possession or seisin, when once established by proof, continues, and, in the absence of evidence to the contrary, legally infers therefrom its subsequent existence. But we know of no rule of law which permits us to reason in an inverse order, and to draw from proof of the existence of present facts any inference or presumption that the same facts existed many years previously."

We do not, however, think that the rule touching retrospective operation has any application here. We may now further explain why we regard the mortgage with its accompanying schedule as admissible. When the testimony is considered which would tend to show possession and a presumed continuance of possession in connection with the testimony of Mrs. Board showing that there was nothing removed by her before the levy, and that she could not remember having purchased any household effects between that time and the date of the mortgage, it is not too much to say that all these items of evidence tend in some degree to show that there must have been goods and chattels in the house at the time of the attachment and not taken under it which were at least prima facie equal in value to the unsatisfied portion of plaintiff's judgment. Under the decisions before cited on the subject of sales, we think the mortgage was not too remote in point of time, in the absence of proof of change in value meanwhile. It is not meant by this to intimate anything touching the weight of such evidence beyond its prima facie effect.

It appears, both from the language of the first opinion and from decisions there cited, that it does not in any case of this kind require much proof of the existence of leviable and unseized property of a value substantially equivalent to the claim in suit to falsify the return of a sheriff, and to cast upon him the burden of showing why he should not be charged with the amount due on the claim. Touching the amount of evidence required of the plaintiff, it is said in 2 Greenleaf on Ev. (16th Ed.) § 584, respecting liability for not serving mesne process:

"Some evidence must also be given of the officer's ability to execute the process; such as that he knew, or ought to have known, * * * that goods, which he might and ought to have attached, were in the debtor's possession. The averment of neglect of official duty, though negative, it seems ought to be supported by some proof on the part of the plaintiff, since a breach of duty is not presumed; but, from the nature of the case, very slight evidence will be

sufficient to devolve on the defendant the burden of proving that his duty has been performed."

The duty of the sheriff receiving the present writ of attachment is prescribed by statute:

"Such writ shall command the sheriff * * * to attach so much of the lands, tenements, goods, chattels, moneys and effects of the defendant not exempt from execution, wheresoever the same may be found within the county, as will be sufficient to satisfy the plaintiff's demand, and safely keep the same to satisfy any judgment that may be recovered by the plaintiff in such attachment. * * *" 3 Comp. Laws 1897, § 10,559.

As pointed out in our first opinion, the defendant demanded an additional bond of indemnity and promised that if it were given he would seize everything in the house. We scarcely need repeat that the bond was given, and that his return showed the seizure of certain specified property, but not that all of the chattels then in the house were seized. Yet the statutory duty resting upon the sheriff was to attach so much of the property as would be "sufficient to satisfy the plaintiff's demand." Strictly speaking, this is not an action for false return, but is rather for failure and neglect to perform the duty imposed by the statute. Conceding that, in the absence of evidence to the contrary, the ordinary presumption of performance of official duty would prevail, still the evidence received, including admissible evidence rejected and considered in this opinion, would overcome such presumption and cast upon the sheriff the burden of explaining, if he could, why he did not levy upon property sufficient to satisfy the claim.

It thus becomes unnecessary to pass upon the question, urged by counsel for plaintiff at the last hearing, that it was not incumbent upon plaintiff either to allege or to offer proof of any character that there were goods and chattels belonging to the debtor and situated in her home sufficient to satisfy the balance due on the judgment; nor, under the present aspect of the case, was it in fact necessary in the former opinion to determine upon whom the burden of proof is cast under such an allegation, but in the absence of any evidence whatever of value. In short, under the peculiar circumstances of this case, we think that both of these questions should in this court be regarded as open.

The contention that the attachment lien was dissolved by the order of severance made in the action pending in the state court needs but little attention. As it seems to us, the cases cited in support of the claim are not apposite. Defendant admits that the action was based on "a promissory note joint and several in its nature." No question is made concerning the regularity of the proceedings had in the state court. Whether all of the proceedings taken in the case in that court are embraced in the present record does not appear. Both the statute law and the decisions of the state of Michigan are liberal concerning questions of practice, and in working out just ends. Section 10,065, 3 Comp. Laws Mich. 1897; Reading v. Beardsley, 41 Mich. 123, 1 N. W. 965, per Graves, J.

There are also some dates of transactions in the case in the state court, which are to be observed. The writ of attachment was issued December 13, 1902, and on the 19th of that month the sheriff com-

pleted the only proceedings ever taken by him under the writ, save only to make service and his return. It was not until the 24th of the month that the order of the court below was issued enjoining the bank and the sheriff from taking further proceedings in the suit pending in the state court. It has not been suggested that the sheriff could not have seized all of the property in the residence on the 19th, much less that he could not have done so prior to the 24th of the month. Further, the order of severance was made by the state court much later, October 1, 1903.

It should be recalled, too, that the only property levied upon was that of Mrs. Board, and the only property not levied upon, of which complaint is made, also belonged to her. It is not claimed that property belonging only to one of the defendants could not be attached under the writ. The judgment of the state court was against Mrs. Board alone. Why, in any event, should the sheriff be heard to complain of such matters? Plainly the only acts of negligence, if any were committed by the sheriff, which are of any concern in the present action, were consummated while the attachment was admittedly in force and in process of execution. What relevance, then, has the question of dissolution of the attachment to the present controversy? No recovery is sought in this action in virtue of any attachment lien. The recovery claimed is for failure to obtain such a lien. Furthermore, the order of injunction must have been treated as not affecting Mrs. Board's property; for the order was issued in the bankruptcy proceeding pending against the husband alone. The bankruptcy act does not purport to affect the property of the wife. In re Hays (6th Circuit) 181 Fed. 674, 676, 104 C. C. A. 656.

In view of certain evidence offered by defendant tending to show that no articles of real value were omitted from the attachment, the case was one for submission to the jury under appropriate instructions; and the judgment of affirmance of this court and the judgment of the court below are reversed, with costs, and a new trial is awarded.