### MICHIGAN COPPER & BRASS CO. v. CHICAGO SCREW CO.

(Circuit Court of Appeals, Sixth Circuit. December 14, 1920.)

No. 3433.

1. **Trial ⊕⇒177—Case submitted to court by requests of both parties for directed verdict.**

   Where both parties request a directed verdict on all the issues without reservation, they thereby assume that there is no dispute of fact, and submit the whole case to the court for its determination.

2. **Trial ⊕⇒176—Requesting peremptory instruction on particular issue does not preclude going to jury.**

   A party requesting a peremptory instruction on particular issues which he believes to be controlling, regardless of how other issues are determined, is not precluded, if such request is refused, from insisting that the case shall be submitted to the jury, where there is a substantial conflict in the evidence, or where different inferences may be drawn from undisputed evidence.

3. **Sales ⊕⇒73—Contract does not require conformity to sample, where specifications are otherwise.**

   A contract for sale of bronze rods to be manufactured cannot be construed to require the rods to conform to samples submitted by seller, where the samples did not correspond with the specifications of the contract.

4. **Sales ⊕⇒420—Breach of contract, held for jury.**

   Evidence in an action for breach of a contract to manufacture bronze rods *held* such as to require submission of the case to the jury.

In Error to the District Court of the United States for the Eastern District of Michigan; John M. Killits, Judge.

Action at law by the Chicago Screw Company against the Michigan Copper & Brass Company. Judgment for plaintiff, and defendant brings error. Reversed.

Hal H. Smith, of Detroit, Mich. (Beaumont, Smith & Harris, of Detroit, Mich., on the brief), for plaintiff in error.

Howard Streeter, of Detroit, Mich. (Millis, Griffin, Seely & Streeter, of Detroit, Mich., on the brief), for defendant in error.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DONAHUE, Circuit Judge. The Chicago Screw Company brought an action in the United States District Court, Eastern District of Mich-

---

⊕⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

igan, to recover damages from the Michigan Copper & Brass Company, for the failure of that company to deliver a quantity of special bronze rod, which by the terms of the contract entered into between these two companies on the 27th day of November, 1914, the defendant agreed to deliver to plaintiff within the time specified therein. This contract reads in the words and figures following:

"November 27, 1914.

"The Michigan Copper & Brass Company, Detroit, Mich.—Gentlemen: Please enter our order for one million three hundred and fifty thousand pounds (1,350,000) special bronze rod to be shipped inside of the next nine months, in as near equal monthly shipments as possible, or about one hundred fifty thousand pounds (150,000) per month.

"Rods to be made of as follows: 90% copper; 9% zinc; 1% lead.

"Size: .335" to .337" diameter, about ten (10) feet long. Drawn to size and of the same temper as screw machine rods and as per sample submitted by us.

"Prices: December, January, and February shipments to be billed at 16¼c net.

"March 16⅜c, April 16½c, May 16⅝c, June 16¾c, July 16⅞c, August 17c.

"F. o. b. Detroit, freight allowed to your associate factories, namely:

Detroit Screw Works, Detroit.
Western Automatic Machine Screw Co., Elyria, O.
Hartford Machine Screw Co., Hartford, Conn.
Worcester Machine Screw Co., Worcester, Mass.

"Not over 25% to be shipped to Eastern plants.

"Scrap: Scrap ends subject to return at ten one-half cents (10½c) net per pound. F. o. b. Detroit.

"Submitted by,                     Chicago Screw Company,
                                   "W. E. Cooper, V. P. and Treas."

"Accepted by Michigan Copper & Brass Company,
                "A. L. Simmons, Asst. Secretary."

It appears from the record that both parties to this action understood from the terms of this contract that the samples named therein were to be submitted by the Michigan Copper & Brass Company, instead of the Chicago Screw Company, as the contract seems to provide; that in pursuance of this understanding the defendant made up a number of samples and delivered 25 lengths to the Chicago Screw Company and 5 lengths to the Detroit Screw Works. The defendant then shipped five cars of this rod to the plaintiff at Chicago and two cars to the Detroit Screw Works, which shipment aggregated about 150,000 pounds, for which payment was made by the plaintiff for all cars shipped except one. The plaintiff avers that the rods shipped by the defendant upon this contract were of a kind, quality, and description different from and inferior to the bronze rod specified in the contract, and not suited to the use and purpose for which these rods were to be used, or to the use specified in the contract, and that the rods so delivered were not of the diameter of .335 to .337 of an inch, drawn to size and of the same temper as screw machine rods, and were not of the composition named in the contract; that plaintiff, relying upon and trusting to the promise and undertaking of the defendant, paid for the rods so delivered the sum of $30,000, but that by reason of their inferior quality they were returned, and accepted by the defendant company; that the defendant failed to furnish or deliver any other bronze rod whatever, although plaintiff was ready, willing, and able to receive

and pay for the same; that by reason of the defendant's failure in this respect the plaintiff was damaged in the sum of $150,000. To this the defendant pleaded the general issue.

At the close of all the evidence the plaintiff orally moved the court to direct a verdict in its favor, on the ground that the undisputed evidence showed that the defendant failed to perform its obligation under the contract. The defendant also moved the court to direct a verdict in its favor. This motion it appears was in writing, but not filed at that time, for the reason that counsel for plaintiff had not yet reduced his request to writing. Later it was filed by the defendant, but the record shows, that it was tendered after the court had directed the jury to return a verdict for the plaintiff in the sum of $99,426.97.

[1] However, it does not seem to be important when this written motion to direct a verdict for defendant was filed, for it fully appears that the court predicated its action on the oral motions of both plaintiff and defendant for a directed verdict. It is undoubtedly the law that, where both parties request a peremptory instruction upon all the issues in the case without reservation, they thereby assume that there is no dispute of facts and submit the whole case to the court for its determination. Buetell v. Magone, 157 U. S. 154–160, 15 Sup. Ct. 589, 39 L. Ed. 654; Williams v. Vreeland, 250 U. S. 295–298, 39 Sup. Ct. 438, 63 L. Ed. 989, 3 A. L. R. 1038.

[2] This does not prevent a party, making such request for a peremptory instruction upon particular issues that he believes to be controlling, regardless of how other issues might be determined from insisting, if the court refuses to give such limited and qualified request, that it shall submit the case to the jury, where there is a substantial conflict in the evidence, or where different inferences may be drawn from the undisputed evidence. Cattle Co. v. Railway Co., 210 U. S. 1, 28 Sup. Ct. 607, 52 L. Ed. 931, 15 Ann. Cas. 70; Minahan v. Gd. Trunk & Western Ry. Co. (C. C. A. 6) 138 Fed. 37, 41, 70 C. C. A. 463; La Crosse Plow Co. v. Pagenstecher (C. C. A. 8) 253 Fed. 46, 165 C. C. A. 644; Bank v. Maines (C. C. A. 6) 183 Fed. 37, 41, 105 C. C. A. 329; C. & O. Ry. Co. v. McKell (C. C. A. 6) 209 Fed. 514, 516, 126 C. C. A. 336; Breakwater Co. v. Donovan (C. C. A. 6) 218 Fed. 340, 134 C. C. A. 148. It is clear from the record in this case that the defendant did not ask an instructed verdict upon all of the issues in this case, but rather upon certain issues thought by him to be controlling, and to entitle him, under the state of the evidence, to such peremptory instruction.

When the oral motions for peremptory instructions were argued, the court suggested that, in view of these motions being made, it was probably its duty to decide the case without reference to the jury; thereupon counsel for defendant immediately objected, calling the court's attention to the fact that the rule only absolutely applies when peremptory instructions are asked on all questions, and that he, as counsel for defendant, was asking to direct a verdict on particular questions only, and called the attention of the court to issues of fact that should be submitted to the jury, if in the opinion of the court his request for peremptory instructions upon particular questions was not

sustained. This statement of counsel is of too great length to reproduce in this opinion, but upon page 338 of the record this appears:

"I do not want to go too far afield, because I want to leave some of these questions to argue to the jury, of course."

As shown by the record, these motions were argued by counsel on Friday afternoon. Court then adjourned until the following Wednesday morning. Wednesday morning, the court, without further argument of counsel, overruled the motion of the defendant and sustained the motion of the plaintiff. In doing this the court stated that:

"There were no qualifications whatever on either side on the motion. I am not prepared to say that thereafter, after the submission, it was competent for either side to modify its requests without the consent of the other, in such a way as to raise the question for the jury."

When counsel for defendant tendered his written motion, and sought to refresh the recollection of the court in reference to his argument upon the oral motion on the preceding Friday, in which argument he had insisted that, if the court overruled his motion for a directed verdict, there were other issues of fact that should be submitted to the jury, the court then made the further statement that it was the duty of counsel to have interrupted the court while it was delivering its opinion in reference to these motions, and call attention to the fact that this motion for a directed verdict did not cover all the issues in the case, and that it was not the purpose and intent of the defendant by making such motion to waive a jury as to these other issues.

It does not appear, however, that there had been anything said by the court, prior to the time it directed a verdict for the plaintiff, to indicate that it had forgotten the argument of the preceding Friday in reference to the scope and purpose of defendant's motion for a directed verdict; but in any event counsel had a right to rely upon the court's recollection of his repeated statements made in oral argument of this motion as to the effect and scope of it, and it would have been wholly improper and unseemly for counsel to have interrupted the court while it was delivering its opinion upon the questions presented thereby. It is therefore apparent that whether it was or was not error on the part of the court to direct a verdict for the plaintiff depends wholly upon the merits of that motion, unaided by any presumption that the defendant's motion for a directed verdict, upon particular issues in the case, waived the submission to the jury of other issues presented by the pleadings and the evidence. The rule is well settled that it is the duty of the court to direct a verdict where, from the whole evidence, a court would be required to set aside a verdict for the opposing party to the suit. Cattle Co. v. Railway Co., supra; Zilsbersher v. Railroad Co., 208 Fed. 280, 125 C. C. A. 480 (C. C. A. 3).

The trial court, however, did not proceed upon the theory that there was no evidence offered that would sustain a verdict for the defendant; but, on the contrary, it proceeded upon the theory that the request by both parties for a peremptory instruction was upon all the issues in the case and without reservation, and that the effect of such requests was to submit to the court for its determination the whole case

upon the law and the facts. That being the situation, this court would necessarily hesitate to affirm this judgment, if upon any phase of the evidence the jury could have properly returned a verdict for the defendant.

In determining that question, however, it is not necessary for this court to review the evidence in detail, and, in view of the fact that the case must be remanded for a new trial, it ought not to do this, for the reason that anything this court might now say touching the effect that should be given to any particular part of the evidence might seriously prejudice the defendant upon such retrial. It does, however, appear from the record that there was a sharp conflict in the evidence touching the following vital issues in this case upon which the trial court made separate findings of fact, and which issues of fact the defendant, notwithstanding its motion for a directed verdict, was entitled to have submitted to the jury.

There is perhaps little conflict, if any, in the evidence as to the extent to which the samples were tested by the plaintiff before directions were given for delivery; but from this evidence it was clearly a question for the jury to determine whether the plaintiff had given a sufficient test to all these samples to determine the quality and fitness of the entire lot as a standard of comparison for further deliveries, if in fact it was intended that these samples should constitute the standard.

In this connection it further appears from the evidence that the plaintiff made a test of these samples upon a screw machine, but nothing appears to show the nature of the steel in the tools of that machine or the velocity at which it was operated. The defendant caused a test to be made by Brown & MacLaren on some of the rejected rods. This test was made on an ordinary screw machine with tools manufactured of high-speed steel, instead of carbon steel, and the machine was operated at slower speed. The result of this test indicated that the rod could be cut successfully in a screw machine properly tooled and operated. It was, therefore, a question for the jury to determine from this evidence whether the test made by the plaintiff in a screw machine was sufficient to demonstrate whether the sample rod would operate equally successfully in a bullet machine, of the character used by plaintiff in the manufacture of bullets from the rod later delivered to it by defendant.

Nor is there material conflict in the evidence as to the efforts made by the plaintiff to determine the quality of the rods in each or all of the shipments. It was a question for the jury to determine whether the result of the attempt made by the plaintiff to use some of these rods was sufficient to justify it in rejecting the entire shipment.

Another question of vital importance in this case is whether or not a rod of this character, containing .34 of 1 per cent. of lead, as it appears these samples did contain, or even 1 per cent. of lead, as called for by the specification, could be produced by a person skilled in the art, free from the defects complained of by the plaintiff. The plaintiff offered the evidence of an expert witness to prove the affirmative of this proposition. This evidence was admitted by the court, but evidence of the expert witness, Searle, offered by defendant, tending to

prove the contrary, was rejected. The rejection of this evidence was prejudicial error.

It appears from a letter written by the plaintiff to the defendant, after it had caused an analysis to be made of the sample rods, that the presence of lead in the mixture was of considerable importance in machining the material. The statement is made in this letter that "the nearer you come to 1 per cent. of lead in the mixture the easier we can machine the material." It further appears from the evidence that the material actually purchased by this plaintiff to take the place of the material that the defendant had agreed to furnish contained 1½ per cent. of lead, and this, in the opinion of the jury, might easily account for the difference in the rod. It also further appears that no opportunity was given to the defendant to manufacture rods containing 1½ per cent. of lead. On the contrary, it was strictly held to 1 per cent. It is also a question of fact for the determination of a jury whether the plaintiff, in view of all the evidence, acted promptly in rejection of the material furnished by the defendant under this contract. The court found as a conclusion of law that it was the duty of the plaintiff to minimize defendant's damages, and that that duty was fulfilled. The finding by the court that the plaintiff had fulfilled its duty in that regard was a question of fact for the jury.

[3] The court also found as a conclusion of law that the obligation on the part of the defendant was to bring goods to the plaintiff which were according to the samples. In this conclusion we think the court was in error. There are certain specifications in this contract that the sample does not control. It is evident that these sample rods did not conform to the specifications in the contract. For instance, the plaintiff's analysis showed they contained .34 of 1 per cent. of lead. They were less than the minimum size specified in the contract. Notwithstanding, the plaintiff accepted these rods as satisfactory, and could not be heard to complain if rods of similar manufacture and size were furnished by the defendant; yet the defendant was not thereby required to furnish rods under this contract less than the minimum size, or containing less than the amount of lead specified in the contract, and although the samples differed from the specifications in these particulars, the plaintiff could not reject material of proper manufacture in conformity with the specifications written in the contract. The plaintiff, while accepting the samples as a substantial performance of the contract, nevertheless insisted that they should be drawn to the proper size. It also appears that the sample rods were wavy, and this defect in the sample the plaintiff asked to have remedied, so that a departure from the samples in these respects was apparently within the contemplation of both parties.

It is insisted upon the part of the defendant that the samples submitted would control only as to temper. This court, however, is of the opinion that a proper construction of this contract would require a much broader interpretation of this provision. Clearly, however, the sample to be submitted could not change, alter, or vary in any degree the specific requirements of the contract. If the defendant in the production of this sample had followed exactly the formula for its com-

position, provided in the contract, drawn them to the exact size required, with the same temper as screw machine rods, the plaintiff, except for reasons hereinafter stated, could not have rejected these samples or refused to carry out its contract, for this was not a sale by sample, but the sale of a rod to be of specific composition, specific size, and of specific temper. The sample could have no further purpose or intent than to evidence the skill and ability of the defendant to meet the specifications and the state of the art in the manufacure of such rods. If in the production of these samples it had met the specific requirements of the contract, but failed in this latter particular, the plaintiff, of course, could have rejected the sample as defective in manufacture. Otherwise, the plaintiff would have been compelled to take this rod according to the terms of its contract, regardless of whether it was or was not suitable for its purposes, for this contract contains no provision in reference thereto, and, in view of the fact that it instructs the plaintiff how to make the rod, no such provision could be implied.

It was, however, necessarily within the contemplation of both parties that this rod should be properly manufactured and substantially free from all defects that, under the state of the art, could be avoided. This question was one for the jury to determine upon all the evidence in the case, including, of course, the evidence touching the quality and manufacture of the sample rods.

[4] This court is of the opinion that the evidence introduced in the trial of this case is sufficient to sustain a verdict of the jury, either for plaintiff or defendant, and therefore for error of the court in directing a verdict, for error of the court in its construction of this contract in reference to the provision as to samples, and for error of the court in the rejection of the evidence of witness Searle as to the impossibility of producing rod of this composition, free from the defects complained of, the judgment of the District Court is reversed, and cause remanded for a new trial, in conformity with this opinion.