W. A. RAMSEY, LIMITED, AN HAWAIIAN COR-
PORATION, *v.* THE CITY AND COUNTY OF HO-
NOLULU, A MUNICIPAL CORPORATION, ET AL.

No. 1673.

APPEAL FROM CIRCUIT JUDGE FIRST CIRCUIT.
HON. J. J. BANKS, JUDGE.

ARGUED JUNE 16, 1926.                    DECIDED JULY 21, 1926.

PERRY, C. J., LINDSAY, J., AND CIRCUIT JUDGE CASE
IN PLACE OF BANKS, J., DISQUALIFIED.

CONTRACTS—*injunction.*

   Where the specifications in a call for tenders for furnishing
   certain articles to the city and county require that bidders shall
   submit with their tenders a sample of the article in question cor-
   responding with the specifications, and the sample submitted by a
   bidder with his tender does not in every detail correspond with
   the specifications, in the absence of a showing of fraud, favorit-
   ism or corruption, the parties will not be enjoined from entering
   into a contract on this ground, where the contract itself embodies
   the specifications, inasmuch as the sample submitted is only the
   bidder's interpretation of the contract.

OPINION OF THE COURT BY LINDSAY, J.

The City and County of Honolulu, on or about Feb-
ruary 12, 1925, published notice that sealed tenders

would be received and opened at noon on the 24th day of February, 1925, for the furnishing of certain water meters, and that specifications and forms of proposal might be had upon application at the office of the city and county clerk.

The specifications contained, among others, the following provisions:

"12.   Contract.   The successful bidder must within ten days after the award enter into a contract, which contract shall be in the form attached to these specifications."

"13.   Bond for faithful performance.   The successful bidder, must, within ten days after the final award of the bid, execute a bond to the city and county * * * .   The said bond shall be in the form attached to these specifications and shall guarantee the faithful performance of the work in accordance with each and every requirement of the plans, specifications, and contract."

"29.   * * * The piston shall be made of vulcanized rubber, strongly reinforced, smoothly polished, accurately fitted, and moving smoothly in the measuring chamber. The piston shaft shall be of monel metal or rod bronze, firmly fixed in the disc ball and shall travel in a true circle around the control roller."

"31.   Samples.   Bidders shall submit with their tenders, one meter and one box and cover of what they propose to furnish with detailed specifications covering the same."

"33.   * * * Bids will be received on all makes of meters and boxes, which comply with the foregoing general specifications, and the board reserves the right to select the make of meter and box which will best serve the interest of the City and County of Honolulu, regardless of the price, but should there be more than one bid on the meter selected, the lowest bid on that meter will be given the award."

A copy of the contract that the successful bidder would be required to enter into was attached to the specifications.   This contract provides that the contractor agrees to sell, furnish and deliver to the City and County of

Honolulu (the required articles) all to be sold, furnished and delivered according to the terms and as set forth and described in the specifications and proposal and call, which specifications, proposal and call were specifically made a part of the contract. A copy of the bond required to be furnished by the successful bidder was also attached. In response to the call the following parties filed bids: W. A. Ramsey, Limited, $60,570 (meters being what is known as "Worthington" meters); Grace Brothers & Company, $65,893 (said water meters being what is known as "Nash, Type K"); Honolulu Iron Works Company, $69,869.50 (said water meters being what is known as "Trident"), and The Lynch Company, Incorporated, $78,460 (said water meters being what is known as "Lambert").

On February 24, 1925, the sealed bids were opened. On April 7, 1925, the board of supervisors awarded one-half of the contract for water meters to the Honolulu Iron Works for the "Trident" meters and one-half to The Lynch Company, Incorporated, for the "Lambert" meters. On April 15, 1925, a written contract was entered into between the city and county and the Honolulu Iron Works, by the terms of which the Honolulu Iron Works bound itself to furnish to the city and county 2500 meters. The Honolulu Iron Works executed a bond for the performance of its obligations under the contract. One of its obligations was to furnish and deliver the said meters according to the terms and as set forth and described in the specifications, proposal and call attached to the contract and made a part thereof.

On April 14, 1925, W. A. Ramsey, Limited, petitioner herein, filed in the circuit court a bill as a taxpayer, praying for an injunction against the respondents, "commanding them to refrain from entering into a contract with the said Honolulu Iron Works Company for the

furnishing of said water meters under said specifications, but in case the said contract has already been entered into, that the City and County of Honolulu, the said supervisors and the said Honolulu Iron Works be restrained from proceeding under said contract. That the said mayor, the said clerk, the said auditor and the said treasurer be restrained from drawing any warrant voucher or approving the same and from issuing any warrant or paying the same for any contract referred to herein between the City and County of Honolulu and the Honolulu Iron Works Company." Service of the bill for an injunction was not made upon the Honolulu Iron Works until April 16, one day after the contract had been executed. Demurrers on behalf of respondents having been filed, argued and overruled, the respondents answered. The petitioner by leave of court was, on May 16, 1925, allowed to file an amended bill. The chief allegation of the amended bill was to the effect that the piston in the sample of the "Trident" meter submitted by the Honolulu Iron Works with its bid was not reinforced, as required by clause 29 of the specifications, and that, therefore, the city and county was without legal authority to execute a contract with the Honolulu Iron Works for the furnishing of the meters.

After a hearing which occupied about ten days, the circuit judge filed a written decision holding that, from the facts in the case, as disclosed by the evidence, it was not necessary to decide whether, as a matter of fact, the piston in the sample meter furnished with the bid of the Honolulu Iron Works was reinforced, but that, as a matter of law, under the facts and circumstances of the case, the petitioner was not entitled to the injunction prayed for. A decree was entered dismissing the bill and petitioner has brought the case here on appeal.

On this appeal the following specifications of error are relied upon by petitioner:

"First: That the Honolulu Iron Works Company was bound to furnish meters under its contract in conformity with the samples submitted with its bid, and therefore, the court erred in holding that after suit had been filed in which was brought into question the legality of the contract, the contractor would be allowed to furnish a meter differing from the sample furnished in an important particular so as to bring the meter furnished within the requirements of the specifications.

"Second: That the court erred in holding and deciding that under the conditions set forth in the decision, the petitioner, as a taxpayer, was not injured and therefore could not maintain his bill to restrain execution of the contract.

"Third: That the court erred in not holding and deciding that in view of the fact that the sample meters furnished by the Honolulu Iron Works Company with its bid was not in compliance with the proposals and therefore the bid was void and no legal contract could be based thereon.

"Fourth: The court erred in entering its decree dismissing the bill."

Petitioner has not brought up the transcript of the evidence adduced at the hearing and the only information that we have as to what the evidence was is contained in the decision of the circuit judge. In his decision the circuit judge found from the evidence the following: That it is conceded the sample "Trident" water meter submitted by the Honolulu Iron Works with its bid conformed in all respects to the specifications, except that the petitioner claimed that the piston was not strongly reinforced, or, in fact, reinforced at all; that all the meters upon which the bids were made, including the "Trident," were equipped with a flat circular vulcanized rubber piston, commonly known as the disc piston, some of which were reinforced or strengthened by having em-

bedded in them at the time of the manufacture a steel or iron plate that is, as nearly as practicable, coextensive with the disc itself; that the piston of the "Trident" sample was not reinforced in this manner; that there was considerable conflict in the testimony as to whether the "Trident" sample was reinforced at all; that sometime in March, after the opening of the bids but before the award of the contract, a representative of the "Trident" meter called on the committee of the board of supervisors having water meters under consideration and stated to the committee that if it was desired that the "Trident" meter be equipped with a piston reinforced by a metal insertion it would be done without extra cost to the city and county; that sometime after the execution of the contract the Honolulu Iron Works delivered to the city and county twenty-five per cent of the meters contracted to be delivered; that a sample of the meters delivered was introduced in evidence and it was apparent from its inspection and the testimony of witnesses that it was reinforced by having embedded in it a metal plate that meets the requirements of section 29 of the specifications. The circuit judge, while holding that it was unnecessary to decide whether the piston of the "Trident" sample submitted by the Honolulu Iron Works was, as a matter of fact, reinforced, stated in his decision that there was much diversity of opinion among the witnesses as to this fact. As to this phase of the question the circuit judge said: "I think this was due in large measure to an effort to distinguish between a piston reinforced with metal and one that is in some other manner strengthened. It was the consensus of opinion among the mechanical experts who testified that when a disc piston has embedded in it a metal plate it is thereby reinforced. The disagreement among them arose over the piston in the 'Trident' sample which did not have a metal reinforcement. There was

testimony that a metal insertion is the only way by which a disc water meter piston can be reinforced. On the other hand there was testimony that a metal insertion is only one of the methods by which a disc piston can be reinforced or strengthened and that the piston in the 'Trident' sample is an example of a piston reinforced with other material than metal. In my view of the law it is not necessary to decide this question."

In the absence of a transcript and our consequent inability to examine the evidence adduced at the hearing, we are precluded from finding that, as a matter of fact, the piston of the sample "Trident" meter submitted by the Honolulu Iron Works with its bid was not reinforced. This being the case, and in view of the specifications of errors relied upon by the appellant, under the facts revealed by the record is petitioner entitled to the relief prayed for? In a case such as is here presented, where a bidder submits with his tender a sample of the article which he proposes to furnish, which does not absolutely conform to the express requirements of the specifications, does the bidder thereby deprive himself of the right to have awarded to him a contract for the furnishing of an article which in all respects conforms to the specifications? If it be assumed, for the sake of argument, that in the present case the piston in the sample of the "Trident" furnished was not reinforced, did that fact vitiate the bid and render the contract awarded to the bidder void? Even if it be assumed that the sample submitted was not perfect in every detail, the agreement which the Honolulu Iron Works by its proposal was offering to enter into was not to furnish to the city and county water meters as per the sample submitted. Its offer was to furnish the city and county with meters, the piston of which, in the express words of the specifications, "shall be made of vulcanized rubber, strongly reinforced,

smoothly polished, accurately fitted," etc.   If the piston in the sample submitted in the present case was not in fact reinforced as required by the specifications, and the Honolulu Iron Works, after accepting the contract, had sought to furnish meters that did not meet the requirements of the specifications but were identical with the sample submitted, the city and county would not have been obliged to receive the meters offered and the Honolulu Iron Works could not have recovered under the terms of the contract.   The specifications, and not the sample submitted by the bidder, are the controlling feature in a case such as this, the sample submitted being nothing more than an attempted interpretation, though a futile interpretation, by the bidder of what he proposes to furnish.

"Where a sample varies from express specifications in the contract, the latter will control."  1 Williston on Sales (2 ed.), Sec. 253.   "The detailed plans furnished by bidders were to advise the city authorities of the interpretation of its plans and specifications by the bidders, and their method of execution." *Jenney* v. *City of Des Moines,* 72 N. W. (Ia.) 550.   "A contract for sale of bronze rods to be manufactured cannot be construed to require the rods to conform to samples submitted by seller, where the samples did not correspond with the specifications of the contract." *Michigan Copper & Brass Co.* v. *Chicago Screw Co.,* 269 Fed. 502.

The case of *Many* v. *Cleveland,* 10 O. C. D. (Ohio) 157, is in many respects similar to the instant case.   In that case tenders were called by the city of Cleveland for the furnishing of lamps.   The specifications required that "each bid shall give the make and style of burner, and candle-power, and shall be accompanied by a lamp completely equipped with sample burner and all necessary appliances for separating the burner."   Daykin Brothers

made a tender but the sample lamp they submitted did not conform in certain respects to the specifications. Plaintiff, a taxpayer, sought to have the city enjoined from entering into a contract with Daykin Brothers on the ground that their bid did not comply with the specifications. In dismissing the petition for an injunction, the court said: "That lamp did not, in all its details, correspond with the specifications, which, among other things, contained the following: 'The lanterns whether square or cylindrical in their cross section, must be provided with glass or other transparent bottoms and surmounted with a top or dome of iridescent and light-reflecting material, and said top or dome provided with a ventilating cap of heavy copper, to assure perfect ventilation and prevent the ingress of insects, and the entire construction to be such as not to be affected in any manner by air currents or high winds.' The testimony was somewhat conflicting as to whether the lamp which was submitted by Daykin at the time his bid was made, had the right kind of a top; whether it was provided with such a device as would prevent insects from getting within the lantern; and whether it was so constructed as that air currents would not disturb the light. The evidence shows that if the contract is entered into, it is not expected that exactly such a lamp as that which was present at the bidding and furnished by Daykin, is to be used; but the contract which will be entered into if this injunction is not allowed, is in evidence before us, and that contract has, as a part of it, all the specifications which were on file in the director's office. So that, if this injunction is allowed, it will prohibit the city from entering into a contract in which the party with whom it is to contract, agrees to furnish everything which the specifications require."

The statutes regarding the letting of public contracts do not require that samples be submitted with tenders

and it may well be that, even had the Honolulu Iron Works not submitted a sample, its proposal, being in all other respects sufficient and based upon the specifications, the city and county might have legally accepted the bid. In the present case it appears that the contract entered into between the Honolulu Iron Works and the city and county meets in all details the requirements of the specifications.

The foregoing sufficiently disposes of the case. It may be remarked, however, that the petitioner in its bill did not ask for a temporary restraining order, and twenty-five per cent of the water meters were delivered soon after the execution of the contract. Furthermore, we were given to understand, at the oral argument, that all of the meters stipulated for under the contract have been delivered. The city and county has had the benefits from the contract and, under all the surrounding circumstances, it would be inequitable to deprive the Honolulu Iron Works of the compensation it is entitled to for a full performance of its contract. It might be otherwise if it appeared, as it does not in this case, that fraud, favoritism or corruption had been imputable to any of the parties respondent.

The decree appealed from is affirmed.

*J. Lightfoot* (*Lightfoot & Lightfoot* on the briefs) for petitioner.

*H. Edmondson* (also on the brief) for respondent Honolulu Iron Works Co.

*H. Hathaway,* City and County Attorney, filed a brief for the City and County and its officials but did not argue.